| UNITED STATES DISTRICT COURT | USDC SDNY |
| SOUTHERN DISTRICT OF NEW YORK | DOCUMENT |
| | ELECTRONICALLY FILED |
| | DOC #: _____ |
| | DATE FILED: November 5, 2018 |

UNITED STATES OF AMERICA

-v.-

KATERINA ARVANITAKIS,

                  Defendant.

GORDON & HAFFNER, LLP,

                  Petitioner.

15 Cr. 457 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

    Petitioner Gordon & Haffner, LLP ("G&H"), a law firm organized as a limited liability partnership in the State of New York, filed a petition (the "Petition") in this criminal matter in May 2018. In the Petition, G&H claims an interest in $35,000 (the "Claimed Funds") now residing in an account containing approximately $450,000 (the "Specific Property"). The Specific Property, in turn, is maintained at a TD Bank account in the name of CSH Ventures LLC Settlement Fund, Gordon & Haffner, LLP, Attorney Trust Account (the "Account").[1] G&H sources its claim to a charging lien attributed to legal services it performed for its client, CSH Ventures, LLC ("CSH"). The Government has moved to dismiss the Petition, arguing that the Specific Property — including the Claimed Funds — was not derived from any legal

---

[1] Petitioner initially sought $60,000, but reduced its claim upon discarding a theory that it was entitled to the additional funds pursuant to a retaining lien.

action brought by G&H. For the reasons set forth below, the Government's motion is granted and the Petition is dismissed.

## BACKGROUND[2]

### A. Factual Background

This forfeiture proceeding arises from a criminal indictment brought by the United States Attorney for the Southern District of New York against Katerina Arvanitakis and Brandon Lisi (collectively, "Defendants"). Defendants, now disbarred attorneys, defrauded various clients by soliciting funds from them based on misrepresentations as to how the funds would be used. (Gov't Br. 2-3). Two of these clients, Paul and Nadine Bibbo (collectively, the "Bibbos"), transferred hundreds of thousands of dollars to Arvanitakis for purported investments in real estate properties. (*Id.* at 3).

In connection with one of these investments, ostensibly relating to a catering hall, the Bibbos transferred $450,000 from their corporation CSH to an account controlled by Arvanitakis, with the understanding that they would quickly receive their money back with a significant return on their investment. (Gov't Br. 4). Arvanitakis then transferred the money to the Trust Account, controlled by G&H, from which the Bibbos understood it would be used to purchase certain foreclosure bidding rights from JAX Ventures ("JAX"). (*Id.*). The money was neither invested nor returned; to allay the Bibbos' resulting

---

[2] The Court will refer to the parties submissions in the following manner: the Government's memorandum of law in support of its motion to dismiss as "Gov't Br." (Dkt. #184); G&H's memorandum of law in opposition to the motion as "G&H Opp." (Dkt. #185); the Government's reply memorandum as "Gov't Reply" (Dkt. #186); and G&H's sur-reply as "G&H Sur-Reply" (Dkt. #188).

concerns, Defendants Lisi and Arvanitakis assured the Bibbos that they would receive even greater returns on the investment with a slightly longer time horizon. (*Id.*). This was false. Worse yet, Defendants induced the Bibbos to part with even more money, which was then used to make cash withdrawals and pay down debts rather than for the promised investments. (*Id.* at 4-5).

When the purchase of the foreclosure bidding rights was disputed, G&H brought suit on behalf of CSH to obtain specific performance from JAX; this resulted in the Specific Property remaining in the Trust Account for the pendency of the litigation. (G&H Opp. 7-8). The matter was ultimately settled between the parties.

On May 3, 2017, a grand jury sitting in this District returned a superseding indictment against Arvanitakis, charging her with wire fraud, identity theft, money laundering, and bankruptcy fraud. (Gov't Br. 5). On May 16, 2017, Arvanitakis pleaded guilty to Count Two of the Indictment, which charged her with wire fraud. (*Id.*). On March 20, 2018, this Court entered an Amended Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "Order of Forfeiture"), acknowledging, among other things, Arvanitakis's consent to the forfeiture of a sum of money equal to $1,285,393, representing the proceeds of her wire fraud offense. (*Id.*). As part of the Order of Forfeiture, Arvanitakis also agreed to forfeit her right, title, and interest in the Specific Property as constituting proceeds traceable to the offense. (*Id.*).

On May 24, 2018, the Bibbos filed a petition in which they asserted sole ownership in the Specific Property. (Gov't Br. 5-6). In it, they claimed that Ms. Bibbo had signed an escrow release in the amount of $450,000 authorizing the transfer of funds to an escrow agent, Steven R. Haffner of G&H, to whom Arvanitakis had referred them. (*Id.* at 6). The Bibbos further stated that they had transferred the funds with the understanding that they would be held in escrow for a transaction involving the aforementioned catering hall, but that the transaction was never completed and the funds were never returned. (*Id.*).

In the Petition, G&H asserts an ownership interest in a portion of the Specific Property. (Petition 1). In particular, G&H argues that it obtained a charging lien due to its work for CSH litigating the dispute with JAX, which entitled it to the Claimed Funds. (*Id.* at 1-2). According to G&H, at the moment it received the funds as escrowee so that CSH could purchase the foreclosure auction bidding rights from JAX, the funds were no longer the property of CSH. When the purchase did not occur, G&H brought suit against JAX, which resulted in CSH recovering the escrowed funds. (G&H Opp. 7-8). Thus, G&H argues, the Specific Property is in fact proceeds of litigation, and the Claimed Funds are the amount of money to which G&H is entitled pursuant to its charging lien. (*Id.*).

**B.     Procedural Background**

G&H filed the Petition on May 30, 2018. (Dkt. #177). The Government filed its motion to dismiss on July 13, 2018, arguing that G&H had failed to demonstrate the existence of a charging lien on the Specific Property, and,

4

thus, lacked standing. (Dkt. #183-84). G&H filed its opposition brief on August 17, 2018. (Dkt. #185). The Government filed its reply brief on September 10, 2018 (Dkt. #186), and then G&H filed its sur-reply on September 17, 2018 (Dkt. #188).

**DISCUSSION**

**A. Applicable Law**

    **1. Legal Standards for a Motion to Dismiss**

Federal Rule of Criminal Procedure 32.2(c)(1) authorizes the Government to move to dismiss a petition for lack of standing before discovery on the petition takes place. The Rule states, in relevant part:

> (A) In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.
>
> (B) After disposing of any motion filed under Rule 32.2(c)(1)(A) and before conducting a hearing on the petition, the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues[.]

Fed. R. Crim. P. 32.2(c)(1)(A)-(B).

The relevant standard for a motion to dismiss a third-party petition in criminal forfeiture proceedings is the plausibility standard of Federal Rule of Civil Procedure 12(b). *See, e.g.*, *Pacheco* v. *Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004). The petition should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Therefore, when considering this motion, the Court should "draw[] all reasonable inferences in

5

[the nonmoving party's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metropolitan Life*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 548 F.3d 82, 88 (2d Cir. 2009)). The nonmoving party is entitled to discovery if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 569 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile Twombly does not require heightened fact pleading of specifics, it does require enough facts to nudge [the nonmoving party's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).

On a motion to dismiss for lack of standing under Rule 12(b)(1), however, the burden of proving standing is on the party asserting it. *See Malik* v. *Meissner*, 82 F.3d 560, 562 (2d Cir. 1996) (holding that the plaintiff bears the burden of establishing subject matter jurisdiction in a complaint). Additionally, in such cases, this Court can refer to evidence outside the pleadings. *See Luckett* v. *Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

    **2.**    **Third-Party Claims to Forfeited Property**

Criminal forfeiture proceedings are governed by Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853. Under Rule 32.2, once a criminal defendant is convicted of the offenses giving rise to the forfeiture allegations, either by trial or plea, the district court must enter a preliminary order of forfeiture divesting the defendant of any right to the property. Fed. R. Crim.

P. 32.2. After this preliminary order is entered, it is "well settled that § 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets[.]" *DSI Assocs. LLC* v. *United States*, 496 F.3d 175, 183 (2d Cir. 2007).

To proceed with a claim under § 853, a claimant must possess a "legal right, title, or interest in the property" that was forfeited. 21 U.S.C. § 853(n)(6)(A). This interest cannot be the general interest of a creditor. *See United States* v. *Ribadeneira,* 105 F.3d 833, 835-36 (2d Cir. 1997) (per curiam); *see also United States* v. *Schwimmer*, 968 F.2d 1570, 1580-81 (2d Cir. 1992) (holding that general creditors lack standing under 18 U.S.C. § 1963(l)(6)). Whether a petitioner has such a legal interest in the property subject to forfeiture is determined by the law of the state giving rise to the property interest asserted. *See Willis Mgt. (Vt.), Ltd.* v. *United States,* 652 F.3d 236, 242 (2d Cir. 2011). If the claimant has no interest in the specific property under state law, standing does not exist and the claim must fail. *See, e.g.*, *United States* v. *Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014).

### 3. Charging Liens Under New York Judiciary Law § 475

G&H argues that it holds such a legal interest in the Claimed Funds on the basis of a charging lien.[3] The charging lien originates in common law and is codified in New York Judiciary Law § 475. *See generally Itar-Tass Russian News Agency* v. *Russian Kurier, Inc.*, 140 F.3d 442, 449-50 (2d Cir. 1998)

---

[3] As mentioned in note 1, G&H has waived any claim based on a retaining lien.

(collecting cases and explaining history of statute). A charging lien grants an attorney a lien on a client's cause of action from inception to judgment:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Jud. Law § 475.

Significantly, a charging lien attaches to funds or proceeds created by the attorney's services, from which the attorney may be paid. *United States* v. *J.H.W. & Gitlitz Deli & Bar, Inc.,* 499 F. Supp. 1010, 1014 (S.D.N.Y. 1980). When an attorney's work leads his or her client to recover money or property, the lien attaches to said property. *See Kaplan* v. *Port Taxi, Inc.,* 452 N.Y.S.2d 237, 238 (2d Dep't 1987). Conversely, when the attorney only defends an existing interest and does not create a fund or proceeds, there can be no lien. *Desmond* v. *Socha,* 327 N.Y.S.2d 178, 180 (3d Dep't 1971), *aff'd,* 31 N.Y.2d 687 (1972) (citations omitted); *see also Emery Celli Brinckerhoff & Abady LLP* v. *Rose,* 920 N.Y.S.2d 240 (Sup. Ct. 2010) (Table) ("Furthermore, although 'a charging lien extends to settlement proceeds … it is only enforceable against

8

the fund created by that action.' Thus, 'where the attorney's services do not create any proceeds but consist solely of defending title or interest already held by the client, there is no lien on the title or interest.'" (internal citations omitted)); *Zelman* v. *Zelman*, 833 N.Y.S.2d 375, 377 (Sup. Ct. 2007).

**B.    Analysis**

The crux of the parties' dispute is whether the Specific Property represents the proceeds of G&H's services or merely pre-existing funds that G&H held onto during the pendency of the JAX lawsuit. For its part, G&H claims that the Specific Property results from a settlement between its client, CSH, and JAX, reasoning as follows: When CSH transferred the funds into escrow for the purchase of the foreclosure bidding rights from JAX, the funds ceased to be the property of CSH, and instead became "subject to the terms of the [parties'] [Auction Bid Agreement] and to the rights and interests of both parties thereunder." (G&H Sur-Reply 1-2). And when the dispute between CSH and JAX began, the funds became part of the subject of the dispute, as evidenced by the fact that G&H, as escrowee, could not return them to CSH without JAX's consent or an order of the Court. (*Id.* at 2). Only after the dispute was settled by restoring the parties to their initial positions — JAX as holder of the disputed property rights and CSH as holder of the funds — was G&H free to return the property. (*Id.* at 2-3). Therefore, the Specific Property is the proceeds of G&H's litigation on CSH's behalf, and G&H's erstwhile role as escrowee is legally irrelevant.

G&H's argument has facial plausibility, but it elides the principal problem with recognizing the Specific Property as the proceeds of litigation: G&H was not attempting to gain a right to the Specific Property as part of the litigation, but rather was seeking to gain bidding rights in a foreclosure action. (G&H Opp. 7-8). Indeed, G&H nowhere suggests that JAX ever claimed ownership in the Specific Property, so it is not clear who G&H is claiming disputed CSH's ownership of said property. (*Id.*). At bottom, G&H is asking that it be rewarded with a charging lien for its failure to obtain the result its client sought in litigation. As noted, however, "an attorney is limited to a lien on [a] judgment 'in his client's favor.'" *Petition of Rosenman & Colin*, 850 F.2d 57, 61 (2d Cir. 1988) (citations omitted). This Court does not accept G&H's argument that a return to a *status quo ante bellum* that its clients hoped to change was actually an affirmative recovery. Nor can the Court agree that the Specific Property was somehow transmuted, by G&H's efforts, from escrowed funds into litigation proceeds.

To support the argument that its conduct here created proceeds and was not simply a defense of existing funds, G&H relies on several New York cases where attorneys obtained charging liens after the parties disputed ownership of certain properties and reached settlements that solved these disputes. (G&H Opp. 8-9; G&H Sur-Reply 3-4). Principal among these cases is *Tunick* v. *Shaw*, 842 N.Y.S.2d 395 (1st Dep't 2007), but G&H's reliance on that decision is misplaced, because, as discussed in this section, the outcome in that case did not merely recreate the *status quo*.

In *Tunick*, two sisters, on behalf of their deceased father, claimed that they were entitled to a collection of 700,000 commercially viable photographs, while their brother claimed ownership to 200,000 of those same photographs, and an undisclosed number of the remaining 500,000. 842 N.Y.S.2d at 396-97. The settlement in the case resolved all claims and counterclaims regarding the ownership of the entire collection, along with various claims for compensatory and punitive damages, by making the siblings co-owners of a corporation with ownership rights in all 700,000 photographs. *Id.* at 397. Therefore, each party emerged from the litigation with an ownership stake in the full collection and with no outstanding ownership disputes or claims against them, a vastly different position for both sides of the dispute than the ones they held at its inception. Given the gains to both parties, New York courts easily determined that this result amounted to judgments in all clients' favors and that the attorneys were entitled to charging liens on the new corporation's collection. *Id.* This comparison does G&H, which won no such favorable resolution for CSH, no favors.

Instead, the instant case is closer to the Second Circuit's decision in *Rosenman & Colin*. There, an attorney sought a charging lien on certain property that his client retained at the close of litigation. However, the other party had never disputed the individual's ownership of that portion of said property. The Court found that the client had "merely retained what she was undisputedly entitled to before the litigation began, which was considerably less than what she claimed she was entitled to." 850 F.2d at 62-63. Here, as

11

there, the mere fact that there was a dispute that was related to the Specific Property does not mean it can be considered affirmative recovery for CSH. Here, as there, CSH hoped for more than it got, but was only able to keep what it started with.

As the Court does not find that the Specific Property was the result of a judgment in CSH's favor, no charging lien attaches to it. Absent a charging lien, G&H lacks the standing to bring this claim, and the Petition must be dismissed.

## CONCLUSION

For the reasons set forth above, the Court grants the Government's motion to dismiss the Petition. The Clerk of Court is directed to terminate the motions at docket entries 165, 174, 178, 182, and 183. Additionally, because other motions have previously been resolved in this Court's prior orders, the Clerk of Court is directed to terminate the motions at docket entries 27, 34, and 121.

SO ORDERED.

Dated: November 5, 2018
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge